UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


THOMAS MUELLER                                    CIVIL ACTION

v.                                                NO. 14-1172

BOLLINGER SHIPYARDS, INC., ET AL.                 SECTION "F"


ORDER AND REASONS

Before the Court is a motion by the defendants, for summary judgment. For the reasons that follow, the motion is DENIED.

Background

This personal injury lawsuit arises from Thomas Mueller's claim that he slipped and fell while inspecting a vessel owned by Bollinger. Mueller sued Bollinger Shipyards, Inc. and Bollinger Marine Operations, L.L.C. claiming that the defendants were negligent in allowing Mueller to use the port exterior stairway before a non-skid surface was applied.

As part of the Newton Creek Project, the City of New York, contracted with Bollinger to construct three motor barges, one of which was Hull 573, the HUNTS POINT. The City provided the plans and specifications for the construction of the barges and the City retained the right to inspect, schedule, approve, or reject any phase of construction. The City furnished the blueprints, specifications, and drawings for the barges, and had a representative present to oversee compliance.

1

Thomas Mueller started working for the City as a seaman in 1984 and was promoted to mate in 1986. He was then promoted to second mate in 1987 and obtained his Master's license in 1992. In 2007 he was then promoted to the position he held at the time of the accident, Captain and Environmental, Health and Safety Coordinator. His position is shoreside and includes going aboard vessels and inspecting them for correct paperwork, crane inspections and monthly safety gear inspections.

In 2013, Mueller traveled to Bollinger's yard in Amelia, Louisiana to inspect the HUNTS POINT.

On October 1, 2013, Mueller was holding a notebook and his raincoat as he was descending the port exterior stairway of the HUNTS POINT; Mueller's left foot slipped forward and off a stair tread, and he began to fall. Mueller contends that as he tried to stop his fall with his right arm, his arm failed, and his left leg became lodged between the stair treads. He stood up and tried to continue down the stairway, but his left leg failed to function and he fell to the bottom of the stairway. As a result, Mueller suffered severe injuries requiring several surgeries.[1] Mueller was aware that the stairs were wet and that the non-skid material had not been applied. Mueller had previously walked through the stairs

---

[1]Mueller alleges the fall resulted in injuries to his upper extremity, right shoulder, left leg, left knee joint and connective tissues joints and nerves. Defendant points out that Mueller has an extensive history of knee problems starting when he was 15 or 16 years old.

in question that same day without incident.

On May 22, 2014 Mueller sued Bollinger Shipyards, Inc. and Bollinger Marine Fabricators, L.L.C. under La. Civ. C. Art. 2317.1. By allowing access to the stairway, which lacked paint, coating, or non-skid substance allegedly required to make the steps safe for use, Mueller contends Bollinger Shipyards, Inc. and Bollinger Marine Fabricators, L.L.C. were negligent. The defendants now move for summary judgment.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  <u>See</u> <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim.  <u>Id</u>.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987); FED. R. CIV. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255.

II.

Both Bollinger companies contend that they are entitled to judgment as a matter of law because: (1) the stairs were not dangerous but were wet, which was an obvious and apparent condition; and (2) the true cause of plaintiff's injuries was his own negligence in descending wet stairs, knowing he had weakened knees, with his hands occupied.  Alternatively, the defendants contend they are immune from liability because they built the stairs according to specifications provided by the City of New York. The Court addresses each of these arguments in turn.

A. Whether the stairs were defective

To prove liability against the custodian of a defective thing

under La. C. C. art. 2317.1[2], the plaintiff must prove that:(1) the
thing that caused the injury was in the custody of the defendant;
(2) there was a vice or defect which created an unreasonable risk
of harm; (3) the defendant should have known of the unreasonable
risk of harm; and (4) the vice or defect caused the damage or the
injury. Latimer v. Chet Morrison Contractors, 2014 U.S. Dist. LEXIS
75631, *11 (W.D. La. May 30, 2014) (citations omitted). Defendants
contend that the stairs were not defective because they were being
built according to U.S. Coast Guard Regulations and were incomplete
at the time, a fact of which plaintiff was aware. Defendants also
submit that the stairs were not defective but, rather, they were
wet: an obvious and open condition for which defendants owed no
duty to the plaintiff. The plaintiff counters that even if the wet
condition of the stairs was open and obvious, a genuine dispute of
material fact exists as to whether the lack of coating constituted
a vice or a defect that created an unreasonable risk of harm.

---

[2]La. C. C. Art. 2317.1 states:
> The owner or custodian of a thing is answerable for
> damage occasioned by its ruin, vice, or defect,
> only upon a showing that he knew or, in the
> exercise of reasonable care, should have known of
> the ruin, vice, or defect which caused the damage,
> that the damage could have been prevented by the
> exercise of reasonable care, and that he failed to
> exercise such reasonable care. Nothing in this
> Article shall preclude the court from the
> application of the doctrine of res ipsa loquitur in
> an appropriate case.

In support of Bollinger's contention that the stairs were not defective because they were built according to U.S. Coast Guard Regulations, Bollinger offered testimony from Robert J. Wilson, Program Manager for Bollinger Marine Fabricators, L.L.C.. Wilson stated that "[p]er the City approved Bollinger paint schedule document, the non-skid coating was applied to the stairs in the November 2013, time-frame, when construction was being finalized." Bollinger also offered testimony from Stephen L. Curry, who was employed by Alion Science and Technology as a ship inspector for the City of New York. He stated that the "City required that the non-skid coating be applied before the vessel was delivered. Bollinger Shipyards scheduled and applied the non-skid coating shortly before delivery, which is standard practice in the ship building industry." While Wilson says that the City approved the paint schedule, Curry says that Bollinger scheduled the required non skid coating work according to industry standards. Bollinger has failed to produce any of the City's paint schedule or the industry customs to resolve for purposes of summary judgment its own conflicting evidence.

B. Whether the condition was open and obvious

The defendants contend that the stairs were not unreasonably dangerous because their slippery condition was open and obvious. The plaintiff counters that what was open and obvious was the slippery condition due to the rain, not the lack of anti skid

6

coating.

Louisiana law mandates a four factor risk-utility balancing test to determine liability, in which the fact finder must balance the gravity and risk of harm against individual societal rights and obligations, the social utility of the thing, and the cost and feasibility of repair. Roy Bufkin, Jr. v. Felipe's Louisiana, LLC et al., ---So.3d---, 2014 LEXIS 2257 (La. Oct. 15, 2014). The court considers the following four factors: (1) the utility of the complained of condition; (2) the likelihood and magnitude of the harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility, or whether it is dangerous by nature. Lester v. Valero Refining-Meraux, LLC, 2015 WL 729703 (E.D. La. Feb. 19, 2015)(citations omitted). While a defendant generally does not have a duty to protect against an open and obvious condition, the hazard should be one that is open and obvious to all- that is everyone who could potentially encounter it. Id. A patently fact-intensive inquiry.[3]

Bollinger focuses on Mueller's knowledge that: (a) it had rained and therefore the stairs were wet, and (b) he knew that the stairs would be slippery because they did not have the non skid

---

[3] It seems useful to observe that if the plaintiff has serious prior knee issues, and evidence of his obligation of awareness because of extensive experience is established at trial, his expectations of a trial outcome could be problematical.

coating. The defendants have not, on this limited record, shown any evidence that everyone who could potentially use the stairs was aware of its condition. "The open and obvious inquiry . . . focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially ascertainable knowledge." Broussard v. State ex rel. Office State Buildings, 113 So.3d 175, 188 (2013). Therefore, Mueller's knowledge of the non-skid coat falls short to determine now that the defect was open and obvious. Defendants cite several cases supporting the premise that there is no duty owed when the unreasonably dangerous condition is created by water or ice because it is open and obvious. See Latimer, 2014 U.S. Dist. LEXIS 75631, *11 (W.D. La. May 30, 2014) (citations omitted)(holding that defendant owed no duty to plaintiff because he was aware of the wet surface conditions). However, those cases are unhelpful because water or ice was the only factor creating a defect; in this case, the alleged defect is the lack of anti-skid coating in addition to the water.  A genuine issue of material fact is presented concerning whether the wet stairway without the non-skid coat was unreasonably dangerous; summary judgment is inappropriate.

    C.   Whether plaintiff's negligence was the sole cause of his injuries

The defendants contend that the only cause for plaintiff's injuries was his own carelessness since he failed to maintain a

three point contact and was holding a notebook and his raincoat. The defendants also suggest that Mueller's degenerative knee condition is another reason why he is at fault and should have paid more attention. Bollinger turns to Mueller's deposition in which he admits that maybe, if he was not holding anything, if he had maintained a three point contact and if he were paying more attention, he might not have fallen.  Again, a fact-intensive inquiry that makes summary relief unavailable.

The defendants' own accident investigation report reveals two possible causes for the fall: (1) Mueller not using three points of contact while climbing down the stairs; and (2) the wet conditions on the main deck plate at the top of the stair and first and second steps from the top of the stairs. Additionally, the report indicates as corrective actions to be taken to prevent recurrence that (1) all employees will be included in the Bollinger Marine Factories orientation process; and (2) anti- slip materials will be installed on the main deck area adjacent to the stairway and the stairway steps. Mueller alleges that the cause of the fall was the lack of anti-skid material in the stairway and its wet condition. Obviously, a classic factual controversy concerning what was the cause, or the causes, of the accident.

D.   Whether defendants are entitled to immunity under La. R.S. 9:2771

The defendants finally and alternatively contend that they are

9

entitled to immunity under La. R.S. 9:2771. This state law immunity provision states:

> No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.

"With respect to tort claims brought by third parties, to avoid liability, the contractor must prove either that the condition created was not hazardous or that it had no justifiable reason to believe that its adherence to the plans and specifications created a hazardous condition." Lyncker v. Design Engineering, Inc., 988 So.2d 812, 815 (La. App. 4 Cir. 2008). The defendants bear the burden of demonstrating immunity. Id. at 817. The City had offices on site and project engineers who supervised the work and planning schedules. The defendants contend that the stairs were built according to the City's specifications and in compliance with U.S. Coast Guard regulations.

However, as noted above, the only evidence Bollinger has thus far offered to prove the City's control over the stairway

specifications was testimony from Robert J. Wilson, Program Manager for Bollinger Marine Fabricators, L.L.C., stating that "[p]er the City approved Bollinger paint schedule document, the non-skid coating was applied to the stairs in the November 2013, time-frame, when construction was being finalized." Bollinger also offered testimony from Stephen L. Curry, who was employed by Alion Science and Technology as a ship inspector for the City of New York, stating that the "City required that the non-skid coating be applied before the vessel was delivered. Bollinger Shipyards scheduled and applied the non-skid coating shortly before delivery, which is standard practice in the ship building industry." While Wilson says that the City approved the paint schedule, Curry says that Bollinger scheduled the required non-skid coating work according to industry standards.

The present record does not resolve the issue of whether the defendants were adhering to the City's schedule or industry customs (or both); indeed, there is some question as to whether the defendants adhered to their own paint schedule[4]. If the defendants produce a paint schedule that establishes that they were adhering to the City's requirements at the time of the accident, they still

---

[4]Wilson mentions a City-approved Bollinger paint schedule but the timing of when the Bollinger paint schedule was approved by the City is an open question on this record. Notably, if Bollinger's trial proof is consistent with its submissions here, the plaintiff, again, will no doubt consider his trial risks in evaluating his case.

owed Mueller an ordinary duty of care and refrain from creating hazardous conditions in the fulfillment of the contractual obligations with the City. Id. at 819. And that focuses on trial facts. Therefore, considering that there are material fact disputes as to whether Bollinger was following the City's paint schedule, the defendants have failed to demonstrate that they are entitled to judgment as a matter of law with respect to their immunity defense under La. R.S. 9:2771[5].

Accordingly, for the foregoing reasons, IT IS ORDERED that the motion for summary judgment is DENIED.

New Orleans, Louisiana, July 22, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[5]The Court does not hold that the defendants are not statutorily immune from liability, only that they have not carried their burden on this summary record.