UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THOMAS MUELLER | CIVIL ACTION |
| v. | NO. 14-1172 |
| BOLLINGER SHIPYARDS, INC., ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is the defendants' second motion for summary judgment.  For the reasons that follow, the motion is DENIED insofar as the defendants claim contractor immunity, but the motion is GRANTED insofar as there is no evidence that the stairway posed an unreasonable risk of harm.

Background

This personal injury lawsuit arises from Thomas Mueller's claim that he slipped and fell while inspecting a vessel under construction and owned by Bollinger.

As part of the Newton Creek Project, the City of New York contracted with Bollinger to construct three motor barges, one of which was Hull 573, the HUNTS POINT.  The City provided the plans and specifications for the construction of the barges and the City retained the right to inspect, schedule, approve, or reject any phase of construction.  The City approved the blueprints,

1

specifications, and drawings for the barges, and had a representative present to oversee compliance.

Thomas Mueller started working for the City as a seaman in 1984 and was promoted to mate in 1986. He was then promoted to second mate in 1987 and obtained his Master's license in 1992. In 2007 he was then promoted to the position he held at the time of the accident, Captain and Environmental, Health and Safety Coordinator. His position is shoreside and includes going aboard vessels and inspecting them for correct paperwork, crane inspections and monthly safety gear inspections.

In 2013, Mueller traveled to Bollinger's yard in Amelia, Louisiana to inspect the HUNTS POINT. On October 1, 2013, Mueller was holding a notebook and his raincoat as he was descending the port exterior stairway of the HUNTS POINT; Mueller's left foot slipped forward and off a stair tread, and he began to fall. Mueller contends that as he tried to stop his fall with his right arm, his arm failed, and his left leg became lodged between the stair treads. He stood up and tried to continue down the stairway, but his left leg failed to function and he fell to the bottom of the stairway. As a result, Mueller suffered severe injuries requiring several surgeries.[1] Mueller was aware that the stairs

---

[1] Mueller alleges the fall resulted in injuries to his upper extremity, right shoulder, left leg, left knee joint and connective tissues joints and nerves. Defendant points out that Mueller has an extensive history of knee problems starting when he was 15 or 16 years old.

were wet and that non-skid paint had not been applied.  Although non-skid paint was not applied until after the accident,[2] the stairway was constructed of steel diamond treads with non-slip stepping pads.  Mueller had previously used the stairs in question that same day without incident.

On May 22, 2014, Mueller sued Bollinger Shipyards, Inc. and Bollinger Marine Fabricators, L.L.C. under La. Civ. C. Art. 2317.1.  By allowing access to the stairway, which lacked non-skid paint allegedly required to make the steps safe for use, Mueller contends Bollinger Shipyards, Inc. and Bollinger Marine Fabricators, L.L.C. were negligent.  On July 22, 2015, the Court denied the defendants motion for summary judgment.  Following additional discovery, the defendants now move for summary judgment a second time.

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact

---

[2] Shortly before delivery of the vessel in January 2014, after the accident, the steps on the ladder were painted with a non-skid paint in November 2013.  The City's specifications did not specify when the paint was to be applied, but applying paint shortly before delivery of the vessel was in accordance with industry practice.

3

to find for the non-moving party. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio.</u>, 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See <u>id</u>. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. <u>Id</u>. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. <u>Id</u>. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."

Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## II. Application

### A. Contractor Immunity

Under Louisiana law, a contractor has a duty to third parties "to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations." Lyncker v. Design Eng'g, Inc., 988 So.2d 812, 814 (La. App. 4 Cir. 2008), writ denied, 922 So.2d 1036 (La. 2008). Notwithstanding this general duty, Louisiana confers statutory immunity on a contractor who follows the plans and specifications of another party. Id.; Cormier v. Honiron Corp., 771 So.2d 193, 197 (La. App. 3 Cir. 2000).

La.R.S. 9:2771 states:

> No contractor ... shall be liable for destruction or deterioration of or defects in any work constructed or

> under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work y the owner. The provisions of this Section shall not be subject to waiver by the contractor.

"With respect to tort claims brought by third parties, to avoid liability, the contractor must prove either that the condition created was not hazardous or that it had no justifiable reason to believe that its adherence to the plans and specifications created a hazardous condition." <u>Lyncker</u>, 988 So.2d at 815 (citation omitted).

The plaintiff submits that the Bollinger defendants were negligent in allowing access to the stairway despite the absence of non-skid paint that would have made the steps safer for use. That the defendants created the Master Paint Schedule that called for application of non-skid paint just prior to vessel delivery, the plaintiff avers, makes them ineligible for statutory immunity. The defendants counter that the paint specifications did not call for the application of non-skid paint on the steps; the specifications simply required there to be some non-skid tread. The steel diamond tread that the steps are made of complied with specifications for non-skid tread, the defendants contend. Moreover, the defendants submit, the City approved the drawings and specifications, and the

573 fully complied with the drawings and specifications.

The plaintiff contends that the absence of the non-skid paint rendered the stairway unreasonably dangerous. Putting aside whether this is so, whether Bollinger is eligible for contractor immunity turns on whether it controlled the timing of the application of that paint. Because the plaintiff at least focuses a fact issue, the Bollinger defendants are not entitled to summary judgment. The summary judgment record indicates that although the City approved of Bollinger's approach, Bollinger controlled the timing of the application of the non-skid paint on the stairs, and that Bollinger chose to adhere to industry practice.[3]

B.   Unreasonably Dangerous, or Obvious, Condition?

Because the Bollinger defendants are not entitled to summary judgment as to contractor immunity, the Court turns to consider whether they are nevertheless entitled to summary judgment dismissing the plaintiff's negligence claims because the absence of non-skid paint was not a defect that posed an unreasonable risk of harm.

Louisiana Civil Code article 2317.1 states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew, or in the exercise of reasonable care, should have known of the ruin, vice, or defect

---

[3] A more interesting issue not briefed by the parties, perhaps because there is no case literature on point, is whether industry practice may constitute a "plan or specification furnished to [the contractor]" sufficient to invoke contractor immunity.

>   which caused the damage, that the damage could have been
>   prevented by the exercise of reasonable care, and that he
>   failed to exercise such reasonable care.

Thus, to prove liability against the owner or custodian of a defective thing under Louisiana Civil Code article 2317 and 2317.1, the plaintiff must prove: (1) that the thing that caused his damage or injury was in the custody or care of the defendant; (2) that there was a vice or defect in the thing, which created an unreasonable risk of harm, (3) that the defendant knew or should have known of the unreasonable risk of harm, and (4) that vice or defect caused the damage or injury.  <u>Babino v. Jefferson Transit</u>, 110 So.3d 1123, 1126 (La. App. 5 Cir. 2013)(citations omitted).  Of course, not every defect gives rise to liability.  "The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances."  <u>Id.</u> (citation omitted).

   The Bollinger defendants submit that the plaintiff has failed to identify a material fact to be tried concerning whether the unpainted stairs made of diamond tread constituted a defect which posed an <u>unreasonable</u> risk of harm.  The Court agrees.

   There is no dispute that the stairway in question was part of a vessel under construction.  Nor is there any dispute that Bollinger complied with the schedule and specifications approved by the City and consistent with industry standards in constructing the

vessel and, in particular, constructing the stairway. The summary judgment record indicates that the stairs on which Mr. Mueller fell were wet from rainfall that day. These stairs were constructed of steel diamond tread non-slip step pads along with handrails designed to prevent slips. This diamond plating design satisfied the specifications of non-skid material. The plaintiff admits these facts, but nevertheless contends that the failure to apply the non-skid paint rendered the stairs, *when wet from rainfall*, unreasonably dangerous. But the plaintiff has wholly failed to submit factual support for an essential element of his claim; no facts of record support a finding that the unpainted steps created a hazardous condition, or that the absence of non-skid paint was in and of itself a defect that posed an unreasonable risk of harm.[4]

The defendants' motion for summary judgment is DENIED insofar as they are not entitled to judgment as a matter of law that they are eligible for statutory contractor immunity. However, because the plaintiff has submitted no evidence in support of his claim that the stairway itself posed an unreasonable risk of harm to Mr. Mueller, the defendants' motion for summary judgment is GRANTED.

---

[4] This is especially so, considering that it is undisputed that the stairs were constructed of steel plating that is designed to prevent slips. There is no evidence that calls into question this record fact: "the diamond tread that these steps were made of complies with MARAD specifications for nonskid tread." The specifications did not specifically mandate the application of non-skid paint, only some kind of non-skid tread.

The plaintiff's claims are hereby dismissed.

New Orleans, Louisiana, December 15, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE